**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1030

AMERICAN CIVIL LIBERTIES UNION OF NORTH CAROLINA; DEAN DEBNAM; CHRISTOPHER HEANEY; SUSAN HOLLIDAY, CNM, MSN; MARIA MAGHER,

        Plaintiffs - Appellees,

        v.

NICHOLAS J. TENNYSON, in his official capacity as Secretary of the North Carolina Department of Transportation; KELLY J. THOMAS, in his official capacity as Commissioner of the North Carolina Division of Motor Vehicles,

        Defendants – Appellants,

        and

THOM TILLIS, North Carolina Speaker of the House of Representatives; PHIL BERGER, President Pro Tempore of North Carolina Senate,

        Intervenors,

        and

MICHAEL GILCHRIST, in his official capacity as Colonel of the North Carolina State Highway Patrol,

        Defendant.

--------------------------

NATIONAL LEGAL FOUNDATION,

        Amicus Supporting Appellants.

On Remand from the Supreme Court of the United States.
(S. Ct. No. 14-35)

Decided on Remand: March 10, 2016

Before TRAXLER, Chief Judge, WYNN, Circuit Judge, and George L. RUSSELL, III, United States District Judge for the District of Maryland, sitting by designation.

Reversed and remanded with instructions by published opinion. Chief Judge Traxler wrote the majority opinion, in which Judge Russell joined. Judge Wynn wrote a dissenting opinion.

**ARGUED:** Kathryne Elizabeth Hathcock, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants. Christopher Anderson Brook, AMERICAN CIVIL LIBERTIES UNION OF NORTH CAROLINA LEGAL FOUNDATION, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Roy Cooper, North Carolina Attorney General, Neil Dalton, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants. Scott W. Gaylord, ELON UNIVERSITY SCHOOL OF LAW, Greensboro, North Carolina, for Intervenors. Steven W. Fitschen, THE NATIONAL LEGAL FOUNDATION, Virginia Beach, Virginia, for Amicus Curiae.

TRAXLER, Chief Judge:

In our previous opinion in this case, we affirmed the decision of the district court and held that North Carolina's specialty license plate program violated the First Amendment. See ACLU v. Tata, 742 F.3d 563 (4th Cir. 2014). The State sought review by the Supreme Court, which vacated our decision and remanded the case to us for reconsideration in light of the Court's decision in Walker v. Texas Div., Sons of Confederate Veterans, Inc., 135 S. Ct. 2239 (2015). See Berger v. ACLU, 135 S. Ct. 2886 (June 29, 2015). After considering Walker and the supplemental briefs filed by the parties, we now reverse the decision of the district court and remand with instructions that the district court enter judgment for the State.

I.

As set out in more detail in our now-vacated decision, North Carolina operates a specialty license plate program that offers, inter alia, a "Choose Life" plate, but the State has repeatedly rejected efforts to include a pro-choice license plate. The ACLU and several vehicle owners brought this action alleging that the State violated the First and Fourteenth Amendments by refusing to offer a pro-choice license plate. The district court granted summary judgment in favor of the plaintiffs and issued an injunction prohibiting the State from

3

issuing "Choose Life" plates without also offering a pro-choice plate. See Tata, 742 F.3d at 566-67.

The State appealed the district court's decision to this court. The State argued that the message conveyed through specialty license plates was government speech and that it was therefore permissible for it to engage in viewpoint discrimination when administering the license plate program. See Pleasant Grove City v. Summum, 555 U.S. 460, 467-68 (2009) ("A government entity has the right to speak for itself . . . and to select the views that it wants to express." (internal quotation marks omitted)).

Applying the factors identified in Sons of Confederate Veterans, Inc. ex rel. Griffin v. Commissioner of the Virginia Department of Motor Vehicles, 288 F.3d 610 (4th Cir. 2002), we rejected the State's argument and held that "the 'Choose Life' plate at issue here implicates private speech rights and cannot correctly be characterized as pure government speech." Tata, 742 F.3d at 575. Because private speech rights were implicated, we held that "the State's offering of a 'Choose Life' license plate in the absence of a pro-choice plate constitutes viewpoint discrimination in violation of the First Amendment." Id.

North Carolina filed a petition seeking review of our decision by the Supreme Court. While the State's petition was pending, the Supreme Court issued its decision in Walker, which

4

involved a challenge to Texas's specialty license plate program. The Supreme Court held that "Texas's specialty license plate designs constitute government speech and that Texas was consequently entitled to refuse to issue plates featuring [the plaintiff's] proposed [Confederate battle flag] design." Walker, 135 S. Ct. at 2253. The Supreme Court thereafter granted the State's petition in Tata, vacated our decision, and remanded the case to us for reconsideration in light of Walker.

The specialty license plate program at issue here is substantively indistinguishable from that in Walker, and the Walker Court's analysis is dispositive of the issues in this case. Accordingly, we now conclude that specialty license plates issued under North Carolina's program amount to government speech and that North Carolina is therefore free to reject license plate designs that convey messages with which it disagrees. See Walker, 135 S. Ct. at 2245 ("When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says."). We therefore reverse the district court's grant of summary judgment in favor of the plaintiffs and remand with instructions that the district court enter judgment in favor of the defendants.

REVERSED AND REMANDED WITH INSTRUCTIONS

5

WYNN, Circuit Judge, dissenting:

In Walker v. Texas Division, Sons of Confederate Veterans, Inc., 135 S. Ct. 2239 (2015), the Supreme Court majority did not address, much less overrule, this Circuit's common-sense recognition that speech can be "mixed"—i.e., that it can have elements of both government and private speech. Insisting otherwise is tantamount to "insisting that a mule must be either a horse or a donkey." David A. Anderson, Of Horses, Donkeys, and Mules, 94 Tex. L. Rev. See Also 1, 4 (2015).

I refuse to believe that with Walker, the Supreme Court meant to force us to choose that the mule in this case is either a horse or a donkey. Instead, Walker's holding, when narrowly understood, does not lead to the conclusion that the North Carolina specialty plate speech at issue here constitutes pure government speech. On the contrary, based on the specifics of this case, it presents mixed speech—with private speech components that prohibit viewpoint discrimination. Accordingly, the district court correctly held that in allowing a "Choose Life" specialty plate while repeatedly rejecting a "Respect Choice" plate, North Carolina violated the First Amendment. Respectfully, I therefore dissent.

I.

A.

"Premised on mistrust of governmental power, the First Amendment stands against attempts to disfavor certain subjects or viewpoints." Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 340 (2010). Chief amongst the evils the First Amendment prohibits are government "restrictions distinguishing among different speakers, allowing speech by some but not others." Id. Indeed, the Supreme Court has called viewpoint discrimination "an egregious form of content discrimination" and has held that "[t]he government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 829 (1995).

The First Amendment's neutrality protections check only government regulation of private speech. By contrast, when the government engages in its own expressive conduct, the Free Speech Clause and its viewpoint neutrality requirements have "no application." Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 467 (2009). Under the "relatively new, and correspondingly imprecise" government speech doctrine, Johanns v. Livestock Mktg. Ass'n, 544 U.S. 550, 574 (2005) (Souter, J., dissenting), the government is generally "entitled to say what it wishes, and

7

to select the views that it wants to express," <u>Summum</u>, 555 U.S. at 468 (quotation marks and citations omitted).

In this Circuit, we have recognized "mixed speech"—that is, speech that is "neither purely government speech nor purely private speech, but a mixture of the two." <u>Planned Parenthood of S.C. Inc. v. Rose</u>, 361 F.3d 786, 789 (4th Cir. 2004). In deciding whether speech is private, government, or mixed, we have looked to instructive factors including the purpose of the program in which the speech has occurred and the identity of the literal speaker. <u>Id.</u> at 793; <u>Sons of Confederate Veterans, Inc. v. Comm'r of Va. Dep't of Motor Vehicles</u>, 305 F.3d 241, 245-46 (4th Cir. 2002); <u>Sons of Confederate Veterans, Inc. v. Comm'r of Va. Dep't of Motor Vehicles</u>, 288 F.3d 610, 618 (4th Cir. 2002). And in the context of several states' specialty license plates, we have held that the instructive factors indicated mixed speech but tipped in favor of private speech interests so as to prohibit viewpoint discrimination. <u>Id.</u>

Last year in <u>Walker</u>, the Supreme Court deemed a Texas specialty license plate to be government speech free from First Amendment protections against viewpoint discrimination. 135 S. Ct. 2239. In doing so, the Supreme Court relied on <u>Summum</u>, 555 U.S. 460, a case dealing with privately donated permanent monuments in public parks. In <u>Walker</u>, as in <u>Summum</u>, the Court focused on three factors: (1) "the history of license plates;"

8

(2) observers' "routine" and "reasonable" associations between the speech at issue and the state; and (3) the extent of state control over the message conveyed. Walker, 135 S. Ct. at 2248-49 (quotation marks and citation omitted). "These [three] considerations, taken together" convinced the Supreme Court that the Texas specialty plate speech at issue was "similar enough" to the privately donated monuments in public parks at issue in Summum "to call for the same result"—that is, that both constituted pure government speech. Id.

B.

Applying the Walker framework here, I conclude that North Carolina's authorization of a "Choose Life" plate and rejection of a "Respect Choice" plate is not simply pure government speech. And because the speech is not just the government's, North Carolina's allowing a "Choose Life" plate while rejecting a pro-choice plate constitutes viewpoint discrimination in violation of the First Amendment.

Beginning with the first Walker factor, North Carolina began putting slogans on its license plates in 1954, adding graphics in 1981. J. Fox, License Plates of the United States 77 (1994). North Carolina's vast array of specialty plates honoring, for example, Corvettes, Piedmont Airlines, and out-of-state universities, substantially postdates the use of a standard state slogan. See id.; N.C. Gen. Stat. § 20-79.4.

9

The legislative history of North Carolina's specialty plate program indicates that it was intended to be a forum for private expression of interests–that is, "'voluntary speech that people are making by purchasing the license plate.'" Am. Civil Liberties Union of N.C. v. Tata, 742 F.3d 563, 572 (4th Cir. 2014) (citing Remark of Representative Tim Moore to the North Carolina House Fin. Comm. (June 2, 2011)). Not surprisingly, then, North Carolina expressly and repeatedly "invite[d] its vehicle owners to '[m]ake a statement with a specialized or personalized license plate' and to 'find the plate that fits you.'" Id. (citations omitted). Further, North Carolina "describe[d] its specialty plate program as 'allow[ing] citizens with common interests to promote themselves and/or their causes.'" Id. (citation omitted). This history supports the conclusion that the challenged speech was not the government's.

Regarding the second Walker factor, whether there exists a "routine" and "reasonable" association between the speech at issue and the government, Walker, 135 S. Ct. at 2248-49 (quotation marks and citation omitted), the specifics before us call any such strong association into serious doubt. In analyzing the second Walker factor, for example, the Supreme Court considered whether "persons who observe[d]" the Texas plates at issue there "routinely—and reasonably—interpret them as conveying some message on the issuers' behalf" and whether "a

10

person who displays a message on a . . . license plate likely intends to convey to the public that the State has endorsed the message." Walker, 135 S. Ct. at 2249 (quotation marks, brackets, and citation omitted). A person who sees a North Carolina "I'd Rather Be Shaggin'" specialty plate during Monday morning rush hour surely does not routinely and reasonably believe that such a plate embodies the State of North Carolina's credo. Nor is it likely that a North Carolina Libertarian who applies for a "Don't Tread On Me" specialty plate is motivated by a desire to convey to the public the government's seal of approval.

Again, North Carolina repeatedly told its citizens that they can "'[m]ake a statement with a specialized or personalized license plate,'" inviting them "to 'find the plate that fits you'" in a "specialty plate program . . . 'allow[ing] citizens with common interests to promote themselves and/or their causes.'" Tata, 742 F.3d at 572 (quoting North Carolina Division of Motor Vehicles website). North Carolina's refrain has surely sunken in and must impact the way the North Carolina public views its specialty plates—as a forum allowing them to make a statement and promote themselves and their causes, just as their government described.

Finally, regarding the third factor, state control over the messages conveyed on specialty plates, here, as in Walker, the

11

state government controls the final wording and appearance of specialty plates.  Id. at 2249; N.C. Gen. Stat. §§ 20-63, 20-79.3A, 20-79.4.  North Carolina's General Assembly must authorize the issuance of any new specialty plates.  Id.  And, as Plaintiffs' own verified complaint demonstrates, North Carolina exercises its authority not simply to authorize new specialty plates but also to reject proposed plates:  Plaintiffs complain that North Carolina "has expressly and repeatedly rejected the development of a pro-choice license plate."  J.A. 11.  Plaintiffs concede that the control factor tilts in the government's favor.

According to North Carolina, the control factor alone is dispositive as to whether speech is the government's.  North Carolina claims that "the Supreme Court's Walker opinion sets out a new test"—the so-called "control test"—that "focuses solely on the level of government control."  Appellants' Supp. Br. at 4.  Yet Walker does no such thing.  Indeed, the words "control test" appear nowhere in Walker, and for good reason. The Supreme Court surely recognized that hinging government speech on government control alone could incentivize the government to increase its control over speech, thereby deem the speech its own, and then use its freedom from First Amendment constraints to discriminate against disfavored speakers and messages at will.  Nothing in Walker suggests that the Supreme

12

Court supports such a circular inquiry that could so easily enable a "subterfuge for favoring certain private speakers over others based on viewpoint." Summum, 555 U.S. at 473.

Applying all three of the factors the Supreme Court laid out in Walker to the specifics of this case shows that the speech at issue is a mixed picture tilting in favor of private speech. I do not deny that some elements of North Carolina's specialty plates, like the state name and the vehicle's tag number, are unquestionably government speech. But the "designated segment of the plate [that] shall be set aside for unique design representing various groups and interests" can, and here does, contain private speech. N.C. Gen. Stat. § 20-79.4.

On appeal, North Carolina argued only that because its specialty plates are government speech, North Carolina can viewpoint-discriminate free from First Amendment constraints. On its lone issue, North Carolina should lose: Because the speech at issue is not purely the government's, the First Amendment's constraints on viewpoint discrimination apply. And in authorizing a "Choose Life" specialty plate while refusing to authorize a pro-choice specialty plate, North Carolina violated those discrimination constraints. The district court's holding to that effect, which is in no other respect challenged, should therefore stand.

13

II.

"Never has the line between the public and private sectors been as blurred as it is today. Private companies run state prisons and public hospitals. Public-private partnerships develop real estate and build sports facilities and office buildings. Management of public schools is delegated to private companies." Anderson, 94 Tex. L. Rev. See Also at 4. And the lines have blurred in the speech realm, too, as "stadium scoreboards of public universities tout not only the teams and schools, but also soft drinks, banks, and car dealers" and cities and schools sell logos and logo placements to private entities. Id. at 5. Such speech need not be viewed simplistically as all government or all private.

North Carolina invited its vehicle owners to "[m]ake a statement" and "promote themselves and/or their causes"—but only if they were on the government's side of a highly divisive political issue. This, North Carolina may not do. Because the specialty plate speech at issue is not pure government speech, North Carolina's allowing a "Choose Life" plate while rejecting a pro-choice plate constitutes viewpoint discrimination in violation of the First Amendment. For this reason, I would affirm the district court's ruling in Plaintiffs' favor and must respectfully dissent.

14